## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **8:13CR148** |
| **vs.** | |
| **JONATHAN M. VIDLAK,** | **FINDINGS AND RECOMMENDATION** |
| **Defendant.** | |

This matter is before the court on the motion to suppress filed by defendant Jonathan M. Vidlak (Vidlak) (Filing No. 17).  Vidlak is charged in the Indictment with receiving and attempting to receive child pornography in violation of 18 U.S.C. § 2252A(a)(2) (Count I) and accessing, with intent to view, child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count II).  **See** Filing No. 1 - Indictment.  Vidlak seeks to suppress all statements made while law enforcement officers executed a search warrant at his home.  **See** Filing No. 17.

The court held an evidentiary hearing on Vidlak's motion on July 25, 2013. Vidlak was present for the hearing along with his counsel, Federal Public Defender David R. Stickman.  The United States was represented by Assistant U.S. Attorney Michael P. Norris.  During the hearing, the court heard the testimony of Douglas County Sheriff's Office (DCSO) Investigator Mark Dishaw (Investigator Dishaw).  The court received into evidence an application and affidavit for a search warrant (Ex. 1), a recording of Investigator Dishaw's interview of Vidlak (Ex. 2 and 2A), a pretrial services report (Ex. 3), a DCSO emergency admittance form (Ex. 101), and Vidlak's written statement (Ex. 102).  The court also took judicial notice of Nebraska Revised Statutes §§ 71-908 and 71-919.  A transcript of the hearing (TR.) was prepared and filed on July 31, 2013.  **See** Filing No. 28.

## FINDINGS OF FACT

On March 22, 2013, at approximately 6:30 a.m., Investigator Dishaw, a DCSO officer for eleven years, specifically serving as a cyber crimes investigator for the past four years, and eight other officers executed a search warrant at Vidlak's residence (TR.

6-7, 32).  After Investigator Dishaw knocked and announced himself, Robert Halverson (Halverson), Vidlak's mother's boyfriend, admitted the officers into the Vidlak residence (TR. 8-10, 28, 32-33).   Five officers, including Investigator Dishaw, entered the residence (TR. 32).  The remaining officers secured the perimeter of the residence (TR. 32).  Vidlak's residence is a single-family brick home with a living room, kitchen, dining room, and bedroom on the first floor (TR. 8).  The bedroom on the first floor is approximately ten feet by twelve feet with a bed and dresser in the room (TR. 9).  There is also a bedroom upstairs (TR. 8-9).  Vidlak used the upstairs bedroom (TR. 8).

At the time Investigator Dishaw and the other officers executed the search warrant, only Vidlak and Halverson were inside the residence (TR. 8-10, 28).  The officers directed Halverson and Vidlak to stand outside or stay right inside the residence while the officers checked to ensure no other people were in the residence (TR. 11, 35).  After the officers checked the residence, Investigator Dishaw asked to speak with Vidlak (TR. 11, 29).   Vidlak agreed to speak with Investigator Dishaw (TR. 11, 29).  Investigator Dishaw moved Vidlak to the bedroom on the first floor and shut the door for privacy to conduct the interview (TR. 11, 29; Ex. 2 - 27:06).  Investigator Dishaw wore a digital recording device and recorded his conversation with Vidlak (TR. 34).  The recorder was not visible to Vidlak (TR. 34).

During their conversation, Investigator Dishaw and Vidlak were alone in the bedroom with the exception of one officer briefly interrupting to ask a question (TR. 11-12).  Investigator Dishaw and Vidlak sat on the bed during their conversation (TR. 12).  The conversation was casual and neither individual raised his voice (TR. 16).  Vidlak was not handcuffed (TR. 25, 35).  Investigator Dishaw did not brandish, display, or make reference to his firearm while speaking with Vidlak (TR. 32).  Investigator Dishaw did not smell any odor of an intoxicating beverage on Vidlak and did not notice any signs of intoxication (TR. 12).  Vidlak did not appear to be under the influence of any substances (TR. 12).  Vidlak was nineteen years old and appeared to understand Investigator Dishaw's questions and provided coherent and consistent answers (TR. 13).  Investigator Dishaw did not have any reason to believe Vidlak suffered from any mental disease or defect other than depression (TR. 22).  Vidlak was not *Mirandized* (TR. 27).

2

At the beginning of their conversation, Investigator Dishaw briefly explained he was with the cyber crimes unit conducting a pornography investigation (TR. 13; Ex. 2 at 27:00-28:00).  Investigator Dishaw informed Vidlak "I want you to know, before I keep talking to you anymore, you are not under arrest, ok?" (TR. 13-14; Ex. 2 - 28:32-28:38). Vidlak responded "ok" (Ex. 2 - 28:38).  Investigator told Vidlak, "you are free to go, you don't have to talk to me ok?" (TR. 13-14; Ex. 2 - 28:39-28:44).  Investigator Dishaw and Vidlak then continued their conversation regarding computer access to child pornography (Ex. 2 - 28:52-29:39).  Vidlak expressed reservations about telling his mother he accessed child pornography (Ex. 2 - 29:57-30:12).  Vidlak discussed how and when he accessed child pornography (Ex. 2 - 30:20-30:57).

Within five minutes into their conversation Vidlak indicated he was depressed and had thoughts of suicide (TR. 16-17, 21, 23).  Vidlak told Investigator Dishaw the last query the officers would find on Vidlak's computer is a search for a suicide hotline (TR. 23, 30; Ex. 2 - 31:17-31:25).  Vidlak informed Investigator Dishaw he was suicidal "for quite some time" (Ex. 2 - 31:30-31:52).  Vidlak stated he thinks about suicide when he goes to bed (TR. 23; Ex. 31:45).  Vidlak stated "every time I see a knife I feel an urge to just plunge it into my chest" (TR. 24; Ex. 2 - 31:55).  Vidlak stated he has never received treatment for depression or suicidal thoughts (Ex. 2 - 32:00-32:40).  Vidlak explained he thought about seeking treatment on March 22, 2013 (Ex. 2 - 32:18-32:24).  Investigator Dishaw recommended Vidlak seek help from Vidlak's mother, who Vidlak said was a nurse (Ex. 2: 32:27).  Investigator Dishaw and Vidlak then turned their conversation toward Vidlak's access of child pornography (Ex. 2 - 33:13).  Vidlak stated he did not want his mother to know about the child pornography (Ex. 2 - 37:56).

Approximately fifteen minutes into their conversation, Vidlak asked, "so, I'm not arrested?"  (TR. 15-16; Ex. 2 - 43:36).  Investigator Dishaw responded "nope, as I said you are actually free to go.  No one is under arrest.  We're just looking for cooperation." (TR. 15; Ex. 2 - 43:39-43:46).  Vidlak responded, "Go ahead and take the computer. Take my whole piece of crap [indistinguishable word] if you want."  (Ex. 2 - 43:48-43:53).

Approximately twenty-five minutes into their conversation, Investigator Dishaw asked Vidlak "for clarification, [indistinguishable dialogue] where are you at mentally

right now.  I'm going to ask you, are you thinking of killing yourself?" (TR. 17; Ex. 2 - 52:20-52:33).   Vidlak said he spoke about suicide with a relative throughout the previous night (TR. 24).   Vidlak explained he has a knife he keeps in his car and every time he sees the knife he thinks about plunging it into his chest (TR. 17, 24, 30-31; Ex. 2 52:50-53:00).  Vidlak indicated he held the knife to his chest about a month and a half before March 22, 2013, and the last time he cut himself was just before he turned seventeen (TR. 18; Ex. 2 - 53:20-53:40).  This concerned Investigator Dishaw, but he did not think that Vidlak was an immediate threat himself (TR. 18, 25).   However, Investigator Dishaw expressed to Vidlak he would not be comfortable leaving Vidlak alone without knowing Vidlak was getting some help (Ex. 2 -54:50-55:20).

After approximately thirty minutes, Investigator Dishaw asked Vidlak to write a written statement regarding his activities related to child pornography (TR. 22; Ex. 2 - 58:26).  Investigator Dishaw informed Vidlak the statement was "completely voluntary" (Ex. 2 - 58:27).   Vidlak agreed to write a statement (TR. 22; Ex. 2 - 58:40-1:01:14). Vidlak began writing the statement in the bedroom and eventually moved to the living room with Investigator Dishaw to finish the statement and allow the officers to search the bedroom (TR. 22; Ex. 2 - 58:40-1:01:14).

Approximately one or two minutes after Investigator Dishaw and Vidlak exited the bedroom, Vidlak's mother arrived (TR. 19).  Investigator Dishaw took Vidlak's mother to the kitchen, informed her of the situation, and explained his concern for Vidlak (TR. 19-20, 36; Ex. 2 - 1:06:30-1:09:00).  Investigator Dishaw recommended she take Vidlak to the hospital for treatment (TR. 19-20).  Vidlak's mother indicated she would not be able to financially afford Vidlak's hospitalization but indicated it was her desire Vidlak receives treatment (TR. 20).

After discussing the situation with two other officers, Investigator Dishaw determined to initiate emergency protective custody (EPC) proceedings because Vidlak expressed a desire to receive help and Vidlak's mother was financially unable to commit Vidlak (TR. 20).  Investigator Dishaw explained an EPC is an involuntary commitment to a mental health facility for people who are showing signs of being a danger to themselves or others (TR. 18).  Investigator Dishaw explained he first considered EPC toward the end of his conversation with Vidlak after Vidlak and his mother expressed

4

financial concerns (TR. 19).   One of the other officers present, Deputy Bolton, took Vidlak into EPC (TR. 25-26).   Vidlak was subsequently handcuffed and transferred to Immanuel Hospital for observation and evaluation (TR. 27).   Investigator Dishaw had no intention to arrest Vidlak when executing the search warrant and Vidlak was not arrested or charged with child pornography on March 22, 2013 (TR. 14, 31).

## LEGAL ANALYSIS

Vidlak makes two separate but related arguments.   First, Vidlak argues the interaction between himself and Investigator Dishaw amounted to a custodial interrogation such that Vidlak was entitled to be advised of his *Miranda* rights at the beginning of the interrogation.   **See** Filing No. 18 - Brief p. 2-12.   Vidlak argues several factors indicate he was in custody.   *Id.*   Vidlak contends although Investigator Dishaw informed Vidlak he was free to leave and did not have to answer questions, this was only done at the very opening of the interrogation.   *Id.* at 6.   Vidlak asserts Investigator Dishaw should have reiterated Vidlak was free to leave and not answer questions after Investigator Dishaw discerned Vidlak's mental condition.   *Id.* at 6-7.   Vidlak argues he was never free to move without being accompanied by an officer and, because of his fragile state of mind, he was more likely to feel trapped and restrained during the interrogation.   *Id.* at 8-9.   Vidlak contends he was not able to voluntarily agree to speak with Investigator Dishaw because Vidlak's mental state affected his ability to make decisions, especially in the presence of several officers.   *Id.* at 9.   Additionally, Vidlak argues Investigator Dishaw used psychological tactics to obtain a statement.   *Id.* at 10-11.   Vidlak contends separating him from family who might give Vidlak support was a questionable tactic because Vidlak was only nineteen years old and likely did not understand the situation.   *Id.*   Lastly, Vidlak argues his involuntary commitment is analogous to an arrest and shows Vidlak was in custody.   *Id.* at 11-12.

Second, Vidlak challenges the voluntariness of his oral and written statements. *Id.* at 12-15.   Vidlak argues his mental condition and suicidal thoughts, which were made clear to Investigator Dishaw, rendered Vidlak susceptible to pressure and coercion.   *Id.* at 13-14.  Vidlak contends Investigator Dishaw took advantage of Vidlak's fragile mental condition to obtain Vidlak's statements.   *Id.*   Vidlak asserts Investigator

Dishaw's disregard for Vidlak's condition is evidence of an involuntary confession. *Id.* Vidlak argues the court should hold a *Jackson v. Denno*, 378 U.S. 368 (1964), hearing to determine whether Vidlak's confession was voluntary. *Id.* at 12-13.

### A.    Custodial Interrogation

It is well settled that a law enforcement official is required to advise an individual of his or her *Miranda* rights before questioning if that individual is in custody. *United States v. Muhlenbruch*, 634 F.3d 987, 995 (8th Cir. 2011). "An individual is in custody [for purposes of *Miranda*] when placed under formal arrest, or when his or her freedom is restricted to a degree akin to formal arrest." *United States v. Elzahabi*, 557 F.3d 879, 883 (8th Cir. 2009). Whether a defendant was "in custody" is an objective inquiry. *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2402 (2011).

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. . . . [T]he court must apply an objective test to resolve the ultimate inquiry:  was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

*Id.* (**quoting** *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).

The Eighth Circuit has identified the following six non-exclusive factors to consider when determining whether an individual is in custody:

> (1) whether police told the suspect "that the questioning was voluntary," the suspect could leave or ask the officers to do so, "or that the suspect was not considered under arrest"; (2) whether the suspect's movement was restrained during the questioning; (3) "whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions"; (4) whether police used "strong arm tactics or deceptive stratagems" during questioning; (5) "whether the atmosphere of the questioning was police dominated"; and (6) whether the suspect was arrested at the end of the questioning.

*United States v. Cowan*, 674 F.3d 947, 957 (8th Cir. 2012) (**quoting** *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990)). Application of these factors is not mechanical and the issue of whether an individual is in custody "cannot be resolved

merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *United States v. Czichrary*, 378 F.3d 822, 827-28 (8th Cir. 2004); **see also** *United States v. Perrin*, 659 F.3d 718, 720 (8th Cir. 2011) ("*Griffin* is simply a rubric for considering the ultimate issue, not a mandatory checklist."). From this principal it follows that the presence or absence of any one factor is not determinative on the issue. **See** *Griffin*, 922 F.2d at 1347. Instead, a court must "examine the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." *Id.* (**quoting** *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)). The "most obvious and effective means of demonstrating that a suspect has not been taken into custody" is expressly advising the suspect that he is not under arrest and that his participation in questioning is voluntary. *United States v. Brave Heart*, 397 F.3d 1035, 1039 (8th Cir. 2005) (**quoting** *Griffin*, 922 F.2d at 1349).

Under the totality of the circumstances, the court finds Vidlak was not in custody for purposes of *Miranda* when Investigator Dishaw interviewed Vidlak. Significantly, at the beginning of the interview, Investigator Dishaw unequivocally informed Vidlak he was not under arrest and was free to leave. **See** TR. 13-14; Ex. 2 - 28:32-28:44. Vidlak indicated he understood Investigator Dishaw. In fact, approximately fifteen minutes into the conversation, Vidlak clarified he was not under arrest. **See** TR. 15-16; Ex. 2 - 43:36. Investigator Dishaw confirmed Vidlak was not under arrest and was free to leave. **See** TR. 15; Ex. 43:39-43:46. This factor weighs heavily in favor of finding Vidlak was not in custody. **See** *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (finding of custody mitigated when suspect was told he was not under arrest); **see also** *United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011) ("We have long regarded these admonitions as weighty in the custody analysis."); *United States v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011) (noting "steadfast and unequivocal statements" investigators were not going to arrest defendant and defendant "could leave at any time reveal that a reasonable person would still believe he was free to end the interview and leave"); *United States v. Ollie,* 442 F.3d 1135, 1138 (8th Cir. 2006) (stating "explicit assertion that the defendant

may end the encounter . . . generally removes any custodial trappings from the questioning").

The court's determination of the facts as they relate to several other *Griffin* factors also weighs in favor of finding Vidlak was not in custody.  Vidlak was not physically restrained.  There is no indication that Vidlak felt restrained or trapped during the interview as Vidlak argues.  Vidlak did not have family present during the interview, however there is no indication Halverson's lack of presence affected Vidlak's ability to converse with Investigator Dishaw, especially considering Vidlak's desire to keep his access to child pornography hidden from his mother.  Additionally, Investigator Dishaw did not threaten, coerce, or make Vidlak promises in order to induce a confession. Although Vidlak expressed suicidal ideations, there is no indication Investigator Dishaw took advantage of Vidlak's mental state.  In fact, Investigator Dishaw recommended Vidlak speak with his mother about his suicidal thoughts and seek treatment.  **See, e.g.,** Ex. 2 - 32:00-33:10.  Additionally, the tone throughout the conversation was casual. Neither Investigator Dishaw nor Vidlak raised his voice.  The bedroom was not police dominated.  Investigator Dishaw and Vidlak spoke in private in a bedroom removed from the other officers.  While other officers were present in the residence executing the search warrant, they did not participate in the interview.  There is no evidence that Vidlak's mental condition precluded him from understanding the situation as Vidlak argues.  Vidlak was nineteen years old and his statements indicated he understood the situation.  **See, e.g.**, Ex. 2 - 37:56 (stating he did not want his mother to know about his access to child pornography).  Lastly, Vidlak was not arrested at the end of the interview.  Although Investigator Dishaw had Vidlak placed in EPC, this was for Vidlak's safety due to Vidlak's suicidal ideations.  Investigator Dishaw attempted to have Vidlak's mother take Vidlak to the hospital for treatment.  However, Vidlak and Vidlak's mother did not have the financial resources to support treatment.  Thus, EPC resulted from safety concerns and to alleviate the financial strain treatment would impose on Vidlak and his mother.  Vidlak was not in custody for purposes of *Miranda*, therefore Investigator Dishaw was not required to advise Vidlak of his *Miranda* rights before interviewing Vidlak.

**B.    Voluntariness**

The touchstone for the admissibility of a defendant's statements is voluntariness. ***Brown v. Mississippi***, 297 U.S. 278 (1936).  "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." ***United States v. Perry***, 714 F.3d 570, 574 (8th Cir. 2013) (**quoting** ***United States v. LeBrun***, 363 F.3d 715, 724 (8th Cir. 2004)).  "To determine whether a confession is voluntary, we look at 'the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused.'" ***United States v. Vega***, 676 F.3d 708, 718 (8th Cir. 2012) (**quoting** ***Boslau***, 632 F.3d at 428).  Among the factors the court considers are "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." ***United States v. Wallace***, 713 F.3d 422, 426 (8th Cir. 2013) (**quoting** ***Vega***, 676 F.3d at 718).  It is the government's burden to "prove by a preponderance of the evidence that the challenged statements were voluntary." ***Boslau***, 632 F.3d at 429 (**quoting** ***LeBrun***, 363 F.3d at 724).

As previously discussed, Vidlak was not in custody when he made statements to Investigator Dishaw.  The court's review of the audio recording of the interview corroborates Investigator Dishaw's testimony that the tone of the interview was casual and conversational.  Investigator Dishaw did not raise his voice, threaten, or coerce Vidlak to induce Vidlak's statements.  The interview was one-on-one and in Vidlak's residence.  The interview lasted approximately thirty-five minutes (Ex. 2 - 27:00-1:01:15).  **See** ***United States v. Muhlenbruch***, 634 F.3d 987, 998 (8th Cir. 2011) (noting the significance of the fact that the defendant was interviewed for a "mere twenty-two minutes" in finding the defendant's confession was voluntary); ***Boslau***, 632 F.3d at 429 (describing a forty-three minute interview as "comparatively brief"); ***LeBrun***, 363 F.3d at 726 ("plac[ing] substantial weight on the fact that [the defendant] confessed after a mere thirty-three minutes").  The court's review of the audio recording of the interview reveals although Vidlak expressed suicidal ideations, it does not appear such thoughts affected Vidlak's ability to understand the situation and make voluntary statements.  **See** ***Colorado v. Connelly***, 479 U.S. 157, 164-66 (1986) (holding

9

defendant's mental condition by itself and apart from official coercion does not preclude voluntariness).   There is no evidence Investigator Dishaw exploited Vidlak's mental condition.   Investigator Dishaw did not ignore Vidlak's talk about suicide but instead addressed Vidlak's suicidal thoughts and made recommendations Vidlak seek treatment.   Vidlak was a nineteen-year-old adult who calmly and coherently discussed his actions relating to child pornography and suicidal ideations.   At the end of the interview when Vidlak indicated he would not seek treatment due to financial concerns, Investigator Dishaw, after discussing EPC with other officers and Vidlak's mother, determined to place Vidlak in EPC.

Under these circumstances, the court finds no evidence of coercion.   The evidence does not support Vidlak's argument that his will was overborne or that his mental condition rendered his statements involuntary but instead suggests Vidlak's statements were made during a cooperative and consensual interaction with law enforcement.   For these reasons, the court finds the government has met its burden of proof that Vidlak's statements were made voluntarily.


**IT IS RECOMMENDED TO JUDGE JOHN M. GERRARD that**:

Jonathan M. Vidlak's motion to suppress (Filing No. 17) be denied.


## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation.   Failure to timely object may constitute a waiver of any such objection.   The brief in support of any objection shall be filed at the time of filing such objection.   Failure to file a brief in support of any objection may be deemed an abandonment of the objection.


Dated this 13th day of August, 2013.


BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

10